6 Wh 117
205		205

[ PHILADELPHIA, JANUARY 11TH, 1840. ]


YARDLEY and Another *against* RAUB and Another.


IN ERROR.


By a settlement made in anticipation of marriage, the personal property of a woman was conveyed to trustees, in trust after the marriage, "to pay the rents, issues, profits, and proceeds of the same" to her, to her sole and separate use during her coverture, and if she should survive her intended husband, then to assign the same to her absolutely; with a power of appointment by will. The marriage took place, and some years afterwards, the husband took a lease of a tavern which was supplied with furniture and other necessary and suitable articles by a purchase made with the wife's trust funds in the name of the trustees. The husband and wife lived together in the tavern, the business of which was conducted by him for about 5 years, when the goods were levied upon by an execution issued at the suit of a creditor of the husband. *Held*, that these goods were not liable to the husband's creditors.


ERROR to the Court of Common Pleas of Northampton County.

This was an action of trover brought by William Yardley and James Martin against Daniel Raub and Richard Brodhead, Jr., to recover the value of certain household goods and furniture, claimed by the plaintiffs under the following circumstances.

(Yardley *v.* Raub.)

On the 16th of June, 1821, Sarah Woolston who was possessed of personal property of the value of about twenty-six hundred dollars, being about to marry George Atherton, conveyed by deed all her property to William Yardley and James Martin, upon the following trusts:

" In trust, that the said William Yardley and James Martin, their heirs, executors, administrators and assigns, shall, until the said marriage takes place, pay the rents, issues, profits and proceeds of the same, to the said Sarah Woolston, and from and immediately after the solemnization of the said marriage, pay the rents, issues, profits and proceeds of the same to the said Sarah, to her sole and separate use during her coverture, and if the said Sarah shall survive the said George Atherton, then to convey, assign and transfer the same to the said Sarah, her heirs, executors, administrators and assigns forever. And if the said Sarah shall not survive the said George Atherton, then to convey, assign and transfer the same to such person and persons and for such estate and estates as she the said Sarah shall, notwithstanding her coverture, by any writing under her hand and seal, executed in the presence of two witnesses in the nature of a will or appointment, or otherwise, from time to time direct, limit or appoint, and in default thereof, then to convey, assign and transfer the same to the right heirs and legal representatives of the said Sarah their heirs and assigns forever; if more than one, in equal parts as tenants in common and not as joint tenants; and to and for no other use, intent or purpose whatsoever."

This instrument was recorded in Montgomery county on the 2nd of April, 1827, and in Northampton county on the 27th of June, 1834.

The marriage took place shortly after the date of the settlement. The parties then resided in Bucks county. They afterwards removed to Montgomery county; and in 1830, Atherton took a lease of a tavern at Bethlehem in Northampton county. Various articles of furniture, and other personal property, had previously to this, been purchased with the wife's separate money; and at the time of taking the lease of the tavern, furniture, liquors, and other articles suitable and necessary for a tavern, were purchased in the name of the trustees, to the amount of about two thousand dollars, and placed in the tavern, the business of which was carried on by George Atherton, until the month of August, 1835, when the goods were levied upon by the sheriff of Northampton by virtue of a writ of *fieri facias* against him, and sold.

This action was then brought by the trustees against the sheriff.

On the trial before BANKS (President), on the 28th of November,

(Yardley v. Raub.)

1837, a great deal of evidence was given on both sides, respecting the method in which the various articles of furniture, &c. were acquired, and the sources from which the purchase-money was derived.

The learned judge charged the jury in substance as follows.

" This action is brought by the plaintiffs, as trustees of the wife of George Atherton, under a marriage settlement made by her before her marriage, with the knowledge and consent of said Atherton.

From the evidence it would appear, that she had an estate of about $2600. At the time of the execution of her deed of trust, her estate consisted all of personal property. After the marriage, furniture, goods, liquors, and other articles suitable and necessary for a tavern were purchased, amounting to twenty-five hundred and twenty-one dollars thirty-one cents. These goods were selected and purchased under the examination of her and her husband alone. The trustees were not present when any of the purchases were made. All the said goods were paid for by the trustees. The marriage settlement bears date the 16th of June, 1821: the marriage took place in the same month of the same year, but after its execution. Atherton took a lease of a tavern stand, and some lands, on the 31st of March, 1830. The tavern house was situate in the town of Bethlehem, and the lands were near to it. The lease was for one year, and to commence on the 1st of April, 1830. This lease was to Atherton, and in his own name, and for his own use. Atherton paid the rent, farmed the lands, and conducted and managed the tavern in his own name, and received the produce of the farmed lands, and the profits of the tavern. The goods which were paid for by the trustees, were purchased about the time this lease was taken, and were used in and about the tavern, as goods generally are about a public house. The carriage was used by them both. Some of these goods were sold by the sheriff, and have been sufficiently identified. A judgment was obtained in the Court of Common Pleas of this county against Atherton; and the goods for which this suit is brought were levied upon and sold as the property of George Atherton, in 1835, he having continued to occupy the house and lands up to this time, as I have already stated. The plaintiffs by their endorsement on the lease, guaranteed the payment of the rent, for and on behalf of Atherton. This suit is brought against Raub, who was the sheriff who made the levy and sale, and Brodhead the attorney, who had charge of the collection of the judgment, and who was present superintending and directing the sale. The facts proved are all left for your decision. Do they entitle the plaintiffs to recover? There is not much contrariety in the testimony. You will not I presume have much difficulty in determining the facts: it is the law and not the facts, which has been controverted. By the terms of the marriage settlement, the

(Yardley *v.* Raub.)

trustees held the property, and were to pay the rents, issues, profits, and proceeds thereof to Mrs. Atherton, for her sole and separate use, during the joint lives of her and her husband. If she survived her husband, then they were to release the trust forever to her. If she died during the life of her husband, they were in that case to convey the same as she might direct; and if no disposition of the same was made by her, then they were to convey it to her heirs. Atherton and his wife are both living : so that this case is to be determined in view of that part of the deed only which secures to the wife the rents, issues, profits and proceeds of the farm, for her sole and separate use. Marriage settlements executed before marriage, when fairly and honestly made, are legal and valid ; nor does the policy of the law require that they should be adjudged fraudulent. There are no facts proved in this case which show that this settlement was fraudulent when made; you will therefore view it as a valid, binding instrument. Marriage settlements are mostly made out of caution on the part of the female herself, or her friends, for the purpose of guarding her estate against the misfortunes, unkindness or vices of the husband. By this means a subsistence is secured to herself, and her estate after her death to her offspring or kindred. This is a lawful object, and is not to be discountenanced. They should be fully and fairly enforced so as to realize their objects. This can only be done by a rigid exaction of the term of the trust deed from the parties, on the part of the court. The wife, even, is not permitted to exercise any power over the trust property, but what is reserved to her by the terms of the writing. This alone can save her estate from the undue influence, intermeddling and control of the husband. This is indeed the essential purpose of the deed. Courts will not tolerate that this intention and purpose when duly expressed should be defeated. Therefore the wife for her own safety is herself bound and limited to the mode of disposition prescribed by the deed of trust. She is not deemed the absolute proprietor, nor is she permitted to exercise uncontrolled dominion over it; if she was, her own prudence and the anxious care of parents or friends would in nine cases out of ten prove utterly unavailing. The testimony shows that all, or nearly all the trust estate, was withdrawn from the hands, care and management of the trustees, and invested in this perishable, wasting property, if it can with any propriety be called an investment. The business was carried on by Atherton alone in his name. The business was his, the profits were his, if any were realized. The house and lands were rented by him. The property which is the subject of the present action was placed in his possession by the trustees, with the consent of the wife. The trustees consented to his occupancy and use of it, such as it has been proved to have been. They knew the use it was intended for in Atherton's possession. It may with propriety be asked, was this in conformity to the provisions of

(Yardley v. Raub.)

the trust deed? I am constrained to answer that it was not, if you believe the testimony as to the possession and the use. The trustees were to hold the property, and to pay to Mrs. Atherton for her sole and separate use the rents, profits and proceeds thereof. So far from doing this, they place the entire estate in the hands, and subject to the management of her husband, for his use and profit, in a trade that is not most free from risk and danger. Probably her estate could not have been embarked in a more perilous traffic. This use was not warranted by the trust deed. How is this property, then, in Atherton's possession, as regards his creditors? It was purchased under the supervision of him and his wife. It was placed in his possession, to be used by her in his own name, and for his own profit. It was paid for out of the trust estate, by the trustees, to be sure. It was mixed with his own. It was used by him in his business promiscuously with his own. It was repaired by him at his own expense, whenever repair was necessary. Under these circumstances, was it, as regards his creditors, to be considered as purchased for him, and to be deemed his? The possession and use of personal property, is a strong mark of right to the property; indeed it is the highest evidence of absolute ownership. The person who claims right to property thus possessed and used by another, must omit no duty which is material to his right. If he does, he will be postponed when he comes in conflict with the just creditors of the person in the actual possession of the property. Here the plaintiffs, in point of law, did omit a positive and solemnly enjoined duty. They violated the conditions on which they held the property. They placed it in a situation very likely to defeat the object for which it was committed to their charge, and well calculated to defeat Atherton's just creditors.—How were creditors to know what part of the property thus possessed and used by Atherton, was his; and what the plaintiffs'? There was no schedule in the hands of the plaintiffs that showed this; nor is there anything in the deed of trust which would disclose this important fact. What would creditors do other than what was done in this case, except they would abandon all pretension to raise the debt out of his goods. Atherton's property might have been very successfully covered under this condition of things. We find that the plaintiffs did in fact claim all the property that was in Atherton's possession at the time of the levy and sale, yet it turns out on the trial that no inconsiderable portion of it was confessedly his. The plaintiffs did not only omit a plain and palpable duty, but were guilty of a plain and palpable breach of trust.—The possession of Atherton was not consistent with the trust deed. The deed did not furnish evidence of a right to justify this possession: on the contrary it most clearly demonstrated that the possession was not justified. There is no evidence that the wife had the direction or management of this business, or of the property thus used in it. The business was not her's; it was not

Vol. v.—16

carried on for her sole and separate use, nor is there any thing in the deed which looked to any such employment of the fund. She was not the agent of the trustees in this trade. Although she was in the house with her husband, the possession of the goods was not in her, so as to make it that of the trustees. It was all yielded up without limitation to the management, discretion and judgment of Atherton; and his possession of the goods thus employed, was not the possession of the trustees. The Court then, leaves all the facts to your consideration : you are not bound by anything which the Court may have said touching the facts; you will form your own conclusion of this for yourselves from all the evidence. The Court, then, as to the law, directs you, that if from the testimony you believe that Atherton carried on the business or trade in his own name and for his own use, and contracted debts in it; that he had the possession, order and direction of the business and these goods in it, and that with the consent of the trustees and his wife; then this possession and use of it by Atherton, would not be in accordance with the deed of trust, and therefore would be fraudulent as to Atherton's creditors; and that the levy and sale by Raub, the sheriff, would be warranted by law, and the plaintiffs in that case would not recover. Unless you find the possession, use and occupancy of the property by Atherton to be as is just stated, then your verdict should be for the plaintiffs."

The jury found for the defendants and the plaintiffs removed the record to this Court by a writ of error.

Mr. *Hepburn,* and Mr. *Mallery,* for the plaintiffs in error, cited *Willis on Trusts,* 127. *Sugden on Powers,* 222. *Prevost v. Gratz,* (1 *Peters C. C. Rep.* 364.) *Towers v. Hagner,* (3 *Wharton's Rep.* 48.) *Hoover v. Samaritan Society,* (4 *Wharton's Reports,* 445.) *Thomas v. Folwell,* (2 *Wharton's Reports,* 11.) *Jeremy on Equity,* 207. *Watson on Sheriff,* 183. *Cordovan v. Kennedy,* (*Cowper,* 432.) *Clow v. Woods,* (5 *Serg. & Rawle,* 379.) *Jarmin v. Woolson,* (3 *Term Rep.* 618.) *Dewey v. Baynton,* (6 *East,* 257.) *Quick v. Garrison,* (10 *Wendell,* 335.) 2 *Atkyns,* 217. *Darby v. Rees,* (8 *Term Rep.* 82.)

Mr. *Brodhead* and Mr. *Brown,* for the defendants in error, cited *Sugden on Powers,* 211, 213. *Rundle v. Murgatroyd,* (4 *Dallas,* 305.) *Willis on Trustees,* 181. 1 *Saunders on Uses,* 365. 2 *Chitty's Equity Digest,* 1309. 3 *Harrison's Digest,* 2107. *Eichelberger's Appeal,* (4 *Watts,* 84.) 4 *Kent's Com.* 309. *Atherley on Marriage Settlements,* 284. *Bingham on Coverture,* 218, 285. *M'Glinsey's Appeal,* (14 *Serg. & Rawle,* 64.) *Streeper v. Eckert,* (2 *Wharton's Rep.* 302.) *Cassel v. Spayd,* (3 *Watts,* 409.) *Hart v. Ten Eyck,* (2 *Johns. Chan. Rep.* 81, 108.) *Lancaster v. Dolan,* (1 *Rawle,* 247.) *Pullen v. Reinhart,* (1 *Wharton's Rep.* 520.) *Commonwealth* v.

(Yardley v. Raub.)

*Strembach,* (3 *Rawle,* 343.)    *Babb* v. *Clemson,* (10 *Serg. & Rawle,* 419.)

The opinion of the Court was delivered by

SERGEANT, J.—It is far from being clear, that the trustees were guilty of any departure from the trust, in purchasing in their own name and with the trust moneys, at the instance of the wife, furniture to be placed in a tavern in the possession of the husband and wife, and to be there used and employed by them for the purpose of gaining their common livelihood, and maintaining their family. The wife is by the settlement the owner of the estate to every purpose, except that it is to be separate, and of course to be exempt from the control or liability of the husband. The whole issues and proceeds are to be paid over to her during her husband's life, and if she survived, to be hers absolutely: if not, to go according to her appointment. If the trustees converted the moneys into property with the view of benefiting the *cestui que trust* and at her instance, and placed it in her possession as her separate estate, it still continues so. Neither a court of law nor of equity would, in such case, forfeit the property, but on the contrary would guard the rights of the wife, by following it in its converted shape and holding it to continue trust property. At law if the trust property be money and it be converted into any other chattel, that chattel or the produce will belong to the *cestui que trust ;* and the same rule is said to prevail in equity: *Willis on Trusts,* 87 ; 2 *Madd. Chan.* 149, and cases referred to: but in such case it is presumed the party so entitled has his election either to take the chattel or make the trustee personally responsible for the fund with which the chattel has been purchased. *Ib.* Trust money may be followed into land when it is clearly shown to have been invested in a purchase of that kind ; and parol evidence is admissible to prove that fact, though express proof must be given to show that the land was bought with the trust money. 1 *Hovenden on Frauds,* 468, 471. The wife, with the consent of the trustees, may allow her husband to use her separate property : she may give him the income as it is received ; and here she does no more than allow him through the medium of the trustees, to use her furniture for their common benefit. To say this was a departure from the trust, is a *petitio principii.* It might be, if the property were thereby lost : but that is a matter between her and the trustees : and between them it is material that it was done at her request, and that she was the owner in equity. 3 *Atk.* 444. But whether the property lost, remains to be determined by the other question, what were the rights of the creditors against property thus situated : whether it still remained the separate estate of the wife, under the control of the trustees, or was divested by the execution and sale.

(Yardley *v.* Raub.)

The principle is said to be, that the wife's separate estate placed in the possession of the husband, is protected against his creditors, except where he carries on trade with the goods belonging to his wife, or his possession is inconsistent with the deed. See cases collected 1 *Wats. Sheriff,* 183. Assuming this for the present to be the correct doctrine, the furniture here was not conveyed to the husband, but placed in the tavern as the separate property of the wife, to be there kept and used by the family and guests, as it would be in a private family: it was bought with the wife's money, by the concurrence and in the name of the trustees, and continued under their power and control; and they might at any time have seized and removed it, if circumstances had rendered that course proper to be taken, accounting, of course, to the *cestui que trust* for their acts. It was constructively in their possession. I see no intention to give the husband the property; he was not authorized to sell or to traffic with it, or make title to it directly or indirectly, or render it liable to his creditors; nor does the nature of the property or business, raise an inference that he was authorized to carry on any trade in respect to the property.

As to inconsistency with the deed, it was an appropriation of the proceeds to her use in a different form from money. If the trustees thought proper to do this, and she preferred it, it was because they deemed it a more beneficial mode of enjoying the proceeds; and it was one which they had a right, under the settlement, to adopt without thereby divesting her title, if they saw proper to take the responsibility of employing the fund in this manner.

Judgment reversed and *venire facias de novo* awarded.